# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CLORINDA MEARIDY on behalf of<br>herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>NTHRIVE SOLUTIONS, INC.<br><br>*Defendant.* | ))))))))))) | **PLAINTIFF'S COLLECTIVE AND<br>CLASS ACTION COMPLAINT** |

Plaintiff Clorinda Mearidy ("Named Plaintiff"), by and through counsel, on behalf of herself and all others similarly situated (collectively "Plaintiffs"), hereby set forth this collective and class action against Defendant nThrive Solutions, Inc. ("Defendant"), and allege as follows:

## PRELIMINARY STATEMENT

1.      This action arises out of Defendant's systemic failure across its Customer Service Centers ("call-centers") to compensate Plaintiffs for all hours worked, and for overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*

2.      Plaintiffs consist of current and former call-center associates, or similar positions who work for Defendant in North Carolina and are compensated on an hourly basis.  Throughout the relevant period, Defendant has maintained a corporate policy of

failing to compensate Plaintiffs for all mandatory pre-and/or post-shift work. In particular, Defendant required Plaintiffs to arrive at work prior to their scheduled shift in order to perform a litany of tasks necessary to perform their jobs, including booting up computers, running several software programs, checking emails, checking callbacks, and organizing their desks. As for the end of the shift, Plaintiffs could be required to manually shut down their computers, complete outstanding paperwork, send emails, send reports, follow up with customers, conduct research for claims, and discuss work related matters with coworkers and managers. Plaintiffs only received compensation after this work had been completed, though they were required to perform this work in order to be prepared to answer phone calls when their scheduled shifts began and could be required to stay following the end of their shift. This work was required to be completed to be "call ready." Failure to be "call ready," or prepared to answer phone calls when their scheduled shifts began, could result in warnings, discipline, and ultimately, termination.

3. Defendant, through its managers, were aware that Plaintiffs were completing this pre and/or post-shift work and doing so without compensation. Defendant suffered or permitted, and in fact required Plaintiffs to complete such pre- and/or post-shift work.

4. Plaintiffs routinely worked 40 hours or more per week, without accounting for pre- and/or post-shift work. When pre- and/or post-shift work is included, even those Plaintiffs who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without being compensated for the pre- and/or post-shift work or compensated at the overtime rate for hours worked over 40 per week.

2

5.     Throughout the relevant period, Defendants have also maintained a corporate policy of underpaying and failing to lawfully compensate Plaintiffs at the appropriate overtime rates.  Defendants issued monthly "bonuses" to Plaintiffs, based on objective, nondiscretionary metrics on a "BPA Scorecard," including using "PAW words" during each call, asking for payment in full, summarizing each call by advising the patient of the next due date after making a payment, using the patient's name during each call, and verifying two pieces of identification for each patient.  Defendants, however, failed to take into account such nondiscretionary bonuses during overtime workweeks when calculating Plaintiffs' regular and overtime rates.

6.     Defendant's practice of failing to compensate Plaintiffs for all pre and post-shift work, violated Plaintiffs' rights under the FLSA and NCWHA.

7.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class in North Carolina:

> All non-exempt employees of nThrive Solutions, Inc. who (1) worked at least 40 hours in one full workweek, (2) who primarily interacted telephonically or on-line with customers, and (3) who utilized the UltiPro and LiveVox phone and/or computer systems at any time within the past three (3) years prior to the date of commencement of this action, through the present and/or who were paid monthly bonuses pursuant to the objectively scored "BPA Scorecard" and worked overtime during any pay period for which a bonus was received.

8.     Defendant is liable for its failure to pay Plaintiffs for all work performed.

9.     Plaintiffs who elect to participate in this FLSA collective action seek

3

compensation for all pre and/or post-shift work performed for Defendant, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

10.     Named Plaintiff also brings this action, on her own behalf, and as a representative of similarly situated current, former or future call-center associates, or similar positions, employed by Defendant in North Carolina, under the NCWHA. Named Plaintiff, who is a North Carolina resident and who worked for Defendant in North Carolina, asserts that she and the putative class, who work or worked in North Carolina for Defendant, are entitled to compensation for all pre- and/or post-shift work performed for Defendant whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

11.     Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> All non-exempt employees of nThrive Solutions, Inc. who (1) worked in North Carolina (2) who primarily interacted telephonically or on-line with customers, and (3) who utilized the UltiPro and LiveVox phone and/or computer systems at any time within the past two (2) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action and/or who were paid monthly bonus compensation pursuant to the objectively scored "BPA Scorecard" and worked overtime during any pay period for which a bonus was received.

4

## JURISDICTION AND VENUE

12.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

13.     Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

14.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business in all areas of the state, including, but not limited to, Durham and/or Guilford County, North Carolina, which is located within this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within the Middle District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

16.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

17.     Named Plaintiff is an adult resident of North Carolina, residing at 2113 Maybrook Drive Raleigh, NC 27610. She worked as a Customer Service Representative I and Senior Representative III for Defendant at its Raleigh, North Carolina location from

approximately August 2016, until May 2018. Her scheduled shift was typically 9:00 a.m. through 5:30 p.m., Monday through Friday. She received paychecks and tax documents electronically from Defendant.

18.     Defendant nThrive Solutions, Inc. is a multinational application software technology firm organized under Delaware law, headquartered in Georgia, and has its principal place of business located at 200 North Point Center East Suite 600, Alpharetta, Georgia 30022.

19.     Additionally, Defendant has a call-center location in North Carolina located at 3200 Spring Forest Rd #220, Raleigh, NC 27616 which serves customers throughout the state of North Carolina.

20.     According to its website, Defendant's call-centers "are focused on enabling health care for everyone in every community by evaluating and helping to resolve billing and coverage issues for patients and third party payers," and employ a number of different hourly positions, including, but not limited to, Customer Service Representatives, Patient Account Representative, Eligibility Specialists, Collections and Accounts Receivable Specialists. All of which engage in working telephonically, launching Defendants' software programs prior to being "call-ready" and taking calls with customers and patients.

21.     Upon information and belief, at all relevant times, Defendant employs more than 5,000 (five thousand) employees, thousands of them on an hourly basis, all over the United States. Moreover, upon information and belief, Defendant employs more than 300 customer service employees or individuals in similar positions.

6

22.    At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

23.    At all relevant times, Defendant operated as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

24.    At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

25.    At all relevant times, Defendant has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

## FACTUAL ALLEGATIONS

26.    Defendant employs call-center associates, or similar positions, in its Service Center call-centers, and communicate with current and prospective clients by evaluating and helping to resolve billing and coverage issues for healthcare patients and third-party payers. Defendant compensates call-center associates, or similar positions, on an hourly basis.  Defendant classifies these employees as non-exempt under the FLSA.

27.    Named Plaintiff worked for Defendant as a call-center associate, or in similar positions, during the relevant period.

**A. Unpaid and Required Pre- and/or Post-Shift Work for Call-Center Associates**

28.    Defendant requires call-center associates to work scheduled shifts, typically eight and one-half (8.5) hour shifts, five (5) days per week, with a thirty (30) minute unpaid lunch break each day.

7

29.     During the relevant period, call-center associates typically performed approximately ten (10) minutes of pre-shift work each work day, including manually booting up computers, launching software programs (including UltiPro, a program where employees clock in and clock out; LiveVox, a program that is used to monitor calls and their metrics; other time-tracking programs; payment processing programs; internal webpages; and separate programs specific to certain teams), checking emails, checking callbacks, and organizing desks. Because these duties had to be performed and programs launched by call-center associates before they were able to clock-in using the time-tracking program on their computer, their time engaged in such activities was not properly captured or compensated.

30.     During the relevant period, call-center associates typically performed approximately thirty (30) minutes of post-shift work each work day, including manually shutting down computers, completing outstanding paperwork, sending emails, sending reports, following up with customers, conducting research for claims, and discussing work related matters with coworkers and managers. Because these duties had to be performed after the end of their scheduled shift, or after each employee had clocked out, their time engaged in such activities was not properly captured or compensated.

31.     This required, pre- and/or post-shift work had to be performed before the beginning of each shift and following the end of each shift. The pre-shift work was

8

necessary in order for call-center associates to be "call ready," or prepared to answer calls at the beginning of their scheduled shifts. Additionally, following the end of the shift, post-shift work was necessary to address outstanding work and issues that needed to be addressed with customers who required more time, and to follow up on internal matters with coworkers and managers.

32.     Defendant mandated that call-center associates be "call ready" when their scheduled shifts began, necessitating the aforementioned required pre-shift work.

33.     If call-center associates were not "call ready" when their scheduled shifts began, they risked receiving "tardies" or verbal and written warnings on their records. Multiple tardies or written warnings could result in disciplinary action or termination from employment.

34.     If call-center associates arrived immediately prior to the beginning of their scheduled shifts, they could not feasibly perform all required pre-shift work necessary to be "call ready" when their scheduled shifts began, and they would therefore receive verbal or written warnings for failing to be "call ready" at the scheduled start time of their shift. They also would not be compensated for any work until they clocked-in using the time-tracking programs on their computers.

35.     Defendant did not compensate call-center associates for *any* work performed prior to their clocking-in into the time-tracker program, or any work performed after they clocked-out of the time-tracker program.

36.     Because most call-center associates worked scheduled shifts of at least forty

9

(40) hours per week, this required pre- and/or post-shift work was nearly always overtime work, compensable at one and one-half (1.5) times the regular rate.

37.    Named Plaintiff typically worked approximately ten (10) minutes of pre-shift work each workday and was not compensated for any of this work for the vast majority of her employment with Defendant. Upon complaining to management that the pre-shift work was slowing down her ability to clock-in at her scheduled start time, she alone was permitted to clock-in five (5) minutes early beginning on March 12, 2018, until her separation in May 2018.   However, had Named Plaintiff not complained, she would not have been paid the additional five (5) minutes. Additionally, Named Plaintiff typically worked approximately thirty minutes (30) of post-shift work during her time as a Senior Representative and was not compensated for any of this work for the vast majority of her time as a Senior Representative with Defendant. Notably, Named Plaintiff was not compensated for *all* of her pre-and/or post-shift work throughout her employment with Defendant. Plaintiff Mearidy worked approximately 43.34 hours per week, including pre-and/or post-shift work during at least one workweek, but was only compensated for forty 40 hours of work; and from March 12, 2018, to the date of termination, Plaintiff Mearidy worked 42.92 hours, including pre-and/or post-shift work, but was only compensated for 40 hours of work.   In the aggregate, during her entire period of employment, Plaintiff Mearidy was not paid a minimum of $1,402.49 for unpaid pre-shift work, and $1,215 for unpaid post-shift work.

38.    Defendant's failure to compensate for all pre-and/or post-shift work

10

performed has affected all Plaintiffs similarly.

**B. Unpaid Overtime – Nondiscretionary Bonuses for Workplace Call-Center Associates**

39.     All or most call-center associates were scheduled for and worked at least a full forty (40) hours per week, not including the required pre-and/or post-shift work described above

40.     Call-center associates were compensated at one and one-half (1.5) times their regular hourly rate for all hours Defendant counted as work in excess of forty (40) each week, but not for the uncompensated required pre-and/or post-shift work described above.

41.     Throughout the relevant period, Defendants have issued, as part of their compensation, monthly bonuses to call-center associates, which are identified on wage statements as "Bonus."

42.     Defendant's monthly bonuses were nondiscretionary, and were based on objective metrics on a "BPA Scorecard" pursuant to a formula used by Defendants, including using "PAW words" during each call, asking for payment in full, summarizing each call by advising the patient of the next due date after making a payment, using the patient's name during each call, and verifying two pieces of identification for each patient.

43.     Although Defendants' monthly bonuses were part of call-center associates' compensation, such bonuses were not discretionary, and were based on objective metrics. Despite such objective metrics and the fact that the bonuses were calculated as a fixed dollar amount, Defendants did not take into account such nondiscretionary bonuses when

11

calculating regular and overtime rates.

44.    Accordingly, the overtime rates paid by Defendant did not vary regardless of the sum of call-center associates' regular earnings, nondiscretionary bonuses and other incentive payments, and regardless of the extent to which the nondiscretionary bonuses would have increased the regular hourly rates.

45.    Plaintiff Mearidy typically received between $400.40 and $848.89 in monthly bonuses, and occasionally worked hours in excess of forty (40) per week (exclusive of the pre and post-shift work described above), but only received overtime at a rate of one and one-half (1.5) times her ordinary hourly rate for all hours worked in excess of forty (40) each week, which did not incorporate the amount of the nondiscretionary bonuses.  For example, during at least one week when a quarterly bonus was given to Plaintiff Mearidy, Plaintiff Mearidy worked hours in excess of forty (40) per week, but she only received overtime at a rate of one and one-half (1.5) times her ordinary hourly rate, despite the fact that she received a nondiscretionary bonus, which was on average approximately $600 per month, and which should have been incorporated in determining Plaintiff Mearidy regular rate for any overtime worked during any workweek in any given month.

46.    Defendant's failure to compensate for all overtime worked, and at the appropriate rate, has affected all Plaintiffs similarly

### FLSA COLLECTIVE ACTION ALLEGATIONS

47.     Named Plaintiff brings the First Cause of Action of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

48.     Members of the FLSA class are similarly situated.

49.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

50.     There are numerous (in excess of 300) similarly situated current and former call-center associates that fall within the scope of the aforementioned FLSA class.

51.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

52.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

53.     Named Plaintiff consents in writing to assert her claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Named Plaintiff's signed consent form is filed with the Court as Exhibit A to this Complaint.  As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

13

54.     Named Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## RULE 23 NCWHA CLASS ACTION ALLEGATIONS

55.     Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

56.     <u>Numerosity</u>:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Named Plaintiff at this time, upon information and belief, the class comprises at least 300 individuals.

57.     <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them.  The common questions of law and fact include, but are not limited to, the following:

      a.     Whether pre- and/or post-shift work performed by putative NC Class

14

Members is compensable under the NCWHA;

b.     Whether Defendant's failure to compensate putative NC Class Members for pre- and/or post-shift work is in violation of the NCWHA;

c.     Whether Defendant failed to compensate putative NC Class Members at the earned, accrued, and/or promised rate for all hours worked in excess of forty (40) each week; and

d.     Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

58.     <u>Typicality</u>: The claims of Named Plaintiff are typical of the claims which could be alleged by any member of the putative NC Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all pre- and/or post-shift work, and for hours worked in excess of forty (40) each week at the appropriate hourly rate. Defendant's compensation policies and practices affected all putative NC class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative NC class member. Named Plaintiff and members of the proposed NC class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

15

59.     Adequacy of Representation: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed NC class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

60.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests

16

through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

61. Public Policy Considerations: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

62. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

## FIRST CAUSE OF ACTION
**Violation of the Fair Labor Standards Act
29 U.S.C. § 201, *et seq.*
Brought by Named Plaintiff on Behalf of Herself and all Similarly Situated
Employees**

63. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

64. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

17

65.     At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

66.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

67.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

68.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay for all hours worked to Plaintiffs, including for required, pre- and/or post-shift work performed by Plaintiffs.

69.     Defendant's failure to pay Plaintiffs for all hours worked, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show it acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

70.     As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required pre- and/or post-shift hours worked, and are entitled to

18

recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1,** *et seq.*
**Brought by Named Plaintiff on Behalf of Herself and all Similarly Situated**
**Employees**

71.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

72.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiffs within the meaning of the NCWHA.

73.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

74.     Defendant employed Named Plaintiff, and similarly situated employees, within the State of North Carolina.

75.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for required pre- and/or post-shift work performed by Plaintiffs.

76.     Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

77.     As a result of Defendant's unlawful policies and practices, Plaintiffs have

19

been deprived of compensation due and owing.

78.     Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

79.     As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1.     Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representative of all those similarly situated under the FLSA collective action;

2.     At the earliest possible time, issue notice of this collective action, or allow Named Plaintiff to do so, to all non-exempt employees of nThrive Solutions, Inc. who (1) worked at least 40 hours in one full workweek after April 2017 (2) in any North Carolina call-center, (3) primarily interacting telephonically or on-line with customers, and (4) who utilized the UltiPro and LiveVox phone and/or computer systems at any time within the

20

past three (3) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action, and/or who were paid monthly bonus compensation  pursuant to the objectively scored "BPA Scorecard" and worked overtime during any pay period for which a bonus was received.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

3. Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class and designate the below signed counsel as class counsel;

4. Award Plaintiffs actual damages for unpaid wages and liquidated damages equal in amount for the unpaid compensation found due to Plaintiffs and the class as provided by the FLSA, 29 U.S.C. § 216(b); and award Named Plaintiff and employees in the North Carolina class actual damages for unpaid wages and liquidated damages equal in amount as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (a1);

5. Award Plaintiffs attorneys' fees, costs, and interest pursuant to the FLSA, U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (d);

6. Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

21

Respectfully submitted this April 27, 2020

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*

22